[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
"[T]his is a trivial collection case" according to the defendants. Defendants' Memorandum on Objections to Plaintiff's Request to Amend, June 14, 1993, p. 6.
The plaintiff, Avon Plumbing Heating Co., Inc., alleges that it "provided the defendants with plumbing supplies, goods, services and labor at the defendants' jointly owned real property." Complaint, March 9, 1992, ¶ 4. The six count complaint alleges a variety of theories for recovery. Plaintiff alleges in the first two paragraphs of its complaint as follows:
 "1. The plaintiff, Avon Plumbing Heating Co., Inc., (Avon Plumbing) is a Connecticut corporation with CT Page 4719 a place of business in Avon, Connecticut.
 "2. Avon Plumbing is a licensed plumber, pursuant to Chapter 393 of the Connecticut General Statutes (C.G.S. Section 20-330 et seq.)." Complaint, March 9, 1992, p. 1.
Defendants have denied the allegations of ¶ 2 of the complaint. See Answer, July 14, 1992, p. 1. [108] When the defendants answered, they also filed special defenses, the second of which is pertinent. It states:
 "Plaintiff's recovery upon these pleadings is barred by the written contract requirement of the Home Improvement Act — C.G.S. § 20-429." Answer, July 14, 1992, p. 2-3. [108]
The Home Improvement Act, C.G.S. §§ 20-418 through 20-432, appears applicable. Plaintiff alleges that the project involved the conversion of a barn adjoining defendants' residence into a rentable apartment. Complaint, ¶ 5 and 6.
The Home Improvement Act requires that home improvement contracts must be in writing and signed by the parties. "No home improvement contract shall be valid or enforceable against an owner unless it: (1) is in writing, (2) is signed by the owner and the contractor, . . . ." C.G.S. § 20-429(a). The Supreme Court has made it loud and clear that if there is no written contract, there can be no recovery against an owner.Caulkins v. Petrillo, 200 Conn. 713 (1986); Barrett Builders v.Miller, 215 Conn. 308 (1990); A. Secondino Son, Inc. v.LoRicco, 215 Conn. 336 (1990); Liljedahl Brothers, Inc. v.Grigsby, 215 Conn. 345 (1990); and Sidney v. DeVries,215 Conn. 350 (1990).
Defendants allege there was no such writing. Plaintiff does not claim there was a written agreement. However, the Home Improvement Act exempts from its requirements "any person holding a current professional or occupational license issued pursuant to the General Statutes, provided such person engages only in that work for which he is licensed." C.G.S. § 20-428(4).
The significance of the defendants' second special defense is that Avon Plumbing Heating Co., Inc. is a corporation. As such it could not hold a license which would exempt it from the CT Page 4720 Home Improvement Act. Under the occupational licensing statutes, only natural persons i.e. not corporations may be issued licenses. See C.G.S. §§ 20-330 to 20-341. Avon Plumbing 
Heating Co., Inc. could not hold a plumber's license.
Plaintiff had moved to strike the second special defense. Plaintiff's Motion to Strike, July 20, 1992. [109]. In its accompanying memorandum, plaintiff claimed that the exemption permitted under section C.G.S. § 20-428(4) negated the need for a written contract.
 "The defendants state in their Second Special Defense that the plaintiff's recovery is barred by the written contract requirement of the Connecticut General Statutes Section 20-429. The `Home Improvement Act' (C.G.S. Sec. 20-418 [et seq.)], however, specifically grants an exemption, in Section 20-428(4) for `any person holding a current license issued pursuant to Chapter . . . 393.' Chapter 393 (C.G.S. Sec. 20-330) includes the issuance of licenses to plumbers and heating contractors. As plumbers and heating contractors are exempt from the written contract requirements of C.G.S. Sec. 20-429, Avon Plumbing 
Heating Co., Inc. is exempt from that requirement, and the defendants' Second Special Defense should be stricken by this Court." See Plaintiff's memorandum of Law in Support of Motion to Strike, July 20, 1992 [109.25].
Defendants opposed the motion to strike. Defendants claimed that plaintiffs allegation that it was a "licensed plumber" is a question of fact not law and the allegation has been denied by the defendants. Memorandum, July 23, 1992. [110] The motion to strike was heard on August 17, 1992. During the colloquy between the court and counsel, Judge O'Neil observed: "[I]f he [defendants' counsel] prevails that there is something wrong with your contract under the Home Improvement Statute, then the burden switches to you [plaintiff's-counsel] to prove you [Avon Plumbing] are a licensed plumber." Transcript of Proceedings, August 17, 1992, p. 3 [124] The court, O'Neil, J., denied the motion to strike on August 18, 1992.
In October, 1992, plaintiff moved for partial summary judgment against the defendant, Mark B. Fey. Motion for Partial Summary Judgment, October 16, 1992. [114] In the supporting CT Page 4721 memorandum, the plaintiff states that "all of the Avon Plumbing employees who did the work in question had at the relevant time, and have, current licenses issued pursuant to Chapter 393 (Mr. Brighenti's affidavit, ¶ 3). Accordingly, the only special defense raised for the defendant, Mark B. Fey, must fail." Memorandum of Law in Support of Motions for Partial Summary Judgment, October 16, 1992, p. 3. [114.25] The motion for partial summary judgment was denied on November 16, 1992.
The matter was then referred to a fact-finder. The fact-finder's proceedings were held on December 11, 1992. The fact-finder's report, dated April 9, 1993, was filed on April 14, 1993. It is set forth below.
[PRELIMINARY STATEMENT]
 The undersigned, acting in his capacity as a Fact Finder, heard this matter on December 11, 1992. The parties were represented by competent and effective counsel. Testimony was received and exhibits introduced. The parties elected to submit post-trial briefs.
[SUMMARY OF CLAIMS]
 This matter arose out of a dispute between the Plaintiff, Avon Plumbing and Heating Co., Inc. and the Defendants, Mark B. Fey, Jill H. Fey and Laurel B. Fey. The plaintiff claims it furnished plumbing supplies, goods, services and labor at the Defendants' residence located at 144 Main Street Farmington, Connecticut. The Plaintiff's action is brought in a multi-count complaint.
 The Defendants in their Answer, deny the material allegations in the Complaint and set forth two Special Defenses, i.e., no contractual relationship and, in the alternative, the Plaintiff's non-compliance with the Connecticut Home Improvement Act which would bar any recovery by the Plaintiff.
[FINDING OF FACTS]
 1. That the Plaintiff, Avon Plumbing Heating Co., Inc. is a Connecticut corporation having a place of CT Page 4722 business in Avon, Connecticut.
 2. That the Defendants, Mark B. Fey, Jill H. Fey and Laurel B. Fey are owners/residents of 144 Main Street, Farmington, Connecticut
 3. That the Plaintiff, its agents/representatives had two discussions with the Defendant, Mark B. Fey, in mid to late January of 1991 concerning certain work to be performed in accordance with remodeling which was occurring on the Defendant's residence.
 4. That the parties had had a prior satisfactory contractual relationship and had been acquainted for approximately three to four years.
 5. That while the parties agree a figure of five thousand (5,000.00) dollars was discussed to pay for the work to be performed, the Plaintiff claims this figure was later agreed to a time and material basis.
 6. That not [Sic] written contract was entered into between the parties for the work to be performed.
 7. That a fifteen percent (15%) discount in the contract price was to be afforded to the Defendants by the Plaintiff.
 8. That the Plaintiff undertook to furnish supplies, goods, services and labor to the Defendants' residence.
 9. The work performed was satisfactorily completed in a good and workman-like manner.
 10. That several bills were rendered by the Plaintiff to Defendants (Exhibits A, B D) in which the fifteen (15%) percent discount is not reflected.
 11. That undisputed testimony was elicited that the fair and reasonable value of the Plaintiff's supplies, goods, services and labor was $7,898.24.
[RECOMMENDED DECISION]
While many facts in this case are disputed as the CT Page 4723 existence of a contract or in the alternative, an implied contract existed, it is clear the Plaintiff provided supplies, goods, services and labor on the Defendants' behalf.
 It is the opinion of the undersigned that the Plaintiff has met its burden of proof on Counts Four and Five of its Complaint, and should prevail on the same.
 Because no evidence was offered to the contrary, it is assumed the fifteen (15%) percent discount was not factored in the final bill of; $7,898.24 and, therefore, the Defendants are entitled to a reduction of $1,184.73, with a debt owing of $6,713.51.
 Addressing the Defendants' First Special Defense, it was undisputed that the work performed in a good and workman-like manner and the fair and reasonable value of the work was undisputed. In addition, uncontradicted evidence was elicited that the work was performed and the Defendants were the owners of the property.
 As the undersigned is basing his decision on the Fourth and Fifth Counts of Plaintiff's Complaint, this defense is properly dealt with.
 As to the Defendants' Second Special Defense, counsel has made some persuasive arguments in his brief. Nevertheless, it is the opinion of the undersigned that he has met his burden of proof in the assertion of this defense.
 Lastly, on light of the finding of the undersigned for the Plaintiff on Counts Four and Five only, the debt is non-liquidated in nature and the Plaintiff is not entitled to statutory interest pursuant to C.G.S. § 37-3.
 Accordingly, the undersigned recommends judgment be entered in the amount of Six thousand seven hundred thirteen dollars and fifty-one cents ($6,713.51).
Report of Fact Finder, April 9, 1993 [119] CT Page 4724
The fact-finder's report was filed on April 14, 1993. Neither party was happy with the content of the fact-finder's report. Both filed objections thereto. See Objections to Acceptance of Findings of Fact, April 22, 1993 [120], and Objections, April 21, 1993, [121]. The defendants also filed a request that the case be remanded to the fact-finder. Those requests read:
 1. That the Court, pursuant to Section 546J(5), remand the case to the fact finder for a finding not addressed in the original finding of facts, to wit, was the plaintiff corporation a licensed plumber at the time the work was allegedly done; or
 2. That the Court, pursuant to Section 546J(6), enter judgment in favor of all defendants as a matter of law, since there was no evidence proffered to support a finding that the plaintiff corporation was a licensed plumber at the time the work was allegedly done, and since Chapter 493 makes such a finding impossible. Requests, April 21, 1993. [121.25]
Then, plaintiff filed a "request for leave to file amended complaint on May 20, 1993." See Request to Leave to File Amended Complaint, May 18, 1993, [123]. The principal thrust of the amended complaint is that the plaintiff, instead of alleging "it is a licensed plumber" now alleges that "the employees of Avon Plumbing who did the work were persons duly licensed, pursuant to Connecticut General Statutes § 20-330 et seq. at all times during which the work was done." Amended Complaint, May 18, 1993, p. 2, ¶ 4 [123].
Why plaintiff waited so long to file this amendment baffles the court. The attempt to amend is filed over five months after the fact-finder's hearing, and a month after the filing of the fact-finder's report.
Defendants, of course, object to the request to amend. Defendants' Memorandum on Objections to Plaintiff's Requests to Amend, June 14, 1993, .
Plaintiff has not furnished any authority that a corporation whose employees are duly licensed as plumbers is exempted from the requirements of the Home Improvement Act. Plaintiff, by CT Page 4725 filing this amendment, necessarily relies on such a proposition. Plaintiff's request to amend does not state any reason for the amendment. See Request For Leave To File Amended Complaint, May 18, 1993. [123] No memorandum has been submitted explaining the need or reason for the amendment. It seemed to the court that the amendment was necessary "to get around" the Second Special Defense. But plaintiff, counsel rebuffed that idea.
 THE COURT: Well you're filing this amended complaint [is an] admission that the Defendants are correct?
 MR. CLEMENS: Not at all. What we're not hearing today and what we don't have before the Court is a transcript saying whether or not any evidence was heard on the issue we had before the Factfinder.
 THE COURT: Well wait a minute. As I understand the Defendant's claim you're out the one hundred percent if you can't prove — I think he said paragraph two, wherein you allege that this corporation is a licensed plumber. Now you're going to file an amendment which says its employees, agents, et cetera, who did the work were duly licensed?
 MR. CLEMENS: Yes, your Honor, which is consistent with the proof in the case.
 THE COURT: Well — But isn't that a tacit admission that at least as the complaint stands you failed?
 MR. CLEMENS: No, your Honor. I don't think it's an admission at all. I don't find it to be one at all. In fact, if we have to go back and the Factfinder finds the issue relevant because he's already heard testimony on it, then he can rule on it again. And another point is, your Honor, is —." Transcript of Proceedings, May 24, 1993, pp. 4-5.
Despite counsel's in-court responses to the contrary, the court is convinced that the belated attempt to amend the complaint is prompted by the realization of the absolute bar posed to the complaint by the second special defense.
On the state of the record, i.e. without the amendment, the court would rule that the second special defense bars the CT Page 4726 plaintiff recovery on the complaint. The plaintiff did not have a written contract for the home improvement work which is the subject of this action. The statute, C.G.S. § 20-429, bars any recovery. The case law also confirms what the statute so clearly states. See cases cited at page 2, above.
The only evident reason for the requested amendment is an attempt to skirt the bar of the no-contract provision of the Home Improvement Act.
The court is faced with two questions in deciding whether the amendment should be allowed at this very late stage of the proceedings. If granted, would the amendment save the plaintiff's cause of action? Should the amendment be granted after trial and at this late stage of the proceedings? Both of these questions must be answered in the plaintiff's favor to save the plaintiff's action. Critical and so all-important as these points are to the plaintiff, plaintiff has not supplied any authority to aid the court in deciding these issues. And so the court has wrestled with these issues.
The court would be warranted in concluding that the plaintiff's failure(s) were the result of its belief, right or wrong, that its case was barred by the second special defense and further efforts would be futile.
In considering whether the requested amendment would do the plaintiff any good, the court must decide whether the exemption afforded by C.G.S. § 20-429(4) actually would exempt the plaintiff corporation from the provisions of the Home Improvement Act. Plaintiff says:
 "The `Home Improvement Act' (C.G.S. Sec. 20-418 [et seq.)], however, specifically grants an exemption, in Section 20-428(4) for `any person holding a current license issued pursuant to Chapter . . . 393.' Chapter 393 (C.G.S. Sec. 20-330) includes the issuance of licenses to plumbers and heating contractors. As plumbers and heating contractors are exempt from the written contract requirements of C.G.S. Sec. 20-429, Avon Plumbing Heating Co., Inc. is exempt from that requirement, and the defendants' Second Special Defense should be stricken by this Court." See Plaintiff's memorandum of Law in Support of Motion to Strike, July 20, 1992 [109.25]. CT Page 4727
Plaintiff is incorrect. A plumber is exempt from the Home Improvement Act if he holds an occupational, i.e. plumber's, license issued pursuant to C.G.S. Chapter 393. Avon Plumbing 
Heating Co., Inc. does not hold such a license. It couldn't. Only natural persons may be licensed under Chapter 393. This is clear from the provisions of Chapter 393. And it is pointedly made so by C.G.S. § 20-337. Avon Plumbing Heating Co., Inc. cannot be a "person holding a current license issued pursuant to Chapter . . . 393" as plaintiff alleges in the proposed amended complaint.
In the proposed amended complaint, plaintiff alleges "the employees of Avon Plumbing who did the work were persons duly licensed, pursuant to Connecticut General Statutes § 20-330 et seq. at all times during which the work was done." Amended Complaint, May 18, 1993, p. 2, ¶ 4. [123] This language suggests a reliance on C.G.S. § 20-337. Plaintiff did not bring C.G.S. § 20-337 to the court's attention. That statute states:
 "20-337. Ownership of businesses. Nothing in this chapter shall require that the ownership or control of a business engaged in providing the work or services licensed under the provisions of this chapter be vested in a licensed person, but all the work and services covered by the definitions set forth in section 20-330
shall be performed by persons licensed for such work or occupation under this chapter."
Does § 20-337 help plaintiff? No decisions have been found on the issue. In one case the issue was raised but not decided. See The Stright Sewage Disposal Company, Incorporatedv. Peter P. Ogilvie, et al., ___ CSCR ___ (July 2, 1993). This court has reviewed the legislative history of subsection (4) of § 20-429. See P.A. 90-233 and P.A. 91-90. Nothing was found that shed any real light on the issue.
The Home Improvement Act and the occupational licensing statutes are not in pari materia. But their purposes are related.
The primary purpose of the Home Improvement Act is "the protection of the public." Caulkins v. Petrillo, 200 Conn. 713,720 (1986). "It is evident that the objective of the Home Improvement Act is not only to protect homeowners from CT Page 4728 substandard work, but also to ensure that homeowners are able to make an informed choice on a decision that has potentially significant financial consequences." Barrett Builders v. Miller,215 Conn. 316, 327 (1990).
Some of the protections of the Home Improvement Act are attained, at least in part, by Chapter 393. Those licensed under Chapter 393 are subject to its provisions. Among these are its licensure requirements. To obtain a license, the licensee must have passed an examination which presumably indicates a satisfactory level of competence in the particular occupation. C.G.S. § 20-333. And any person holding a license is subject to suspension or revocation of that license "if the holder thereof is convicted of a felony, is grossly incompetent, engages in malpractice or unethical conduct or knowingly makes false, misleading or deceptive representations regarding his work or violates the rules and regulations established under this chapter." C.G.S. § 20-334.
"[T]he rules and regulations established under this chapter" provide in part:
 "A board may reprimand a licensee, place a licensee on probation or suspend or revoke a license after a hearing before the board, when the findings show one or more of the following acts or practices.
 (a) failure to notify the Department of Consumer Protection of any change of the licensee's name or address within thirty (30) days of such change;
 (b) obtaining or conspiring to obtain with others a license by inducing the issuance thereof in consideration of the payment of money or delivery of any other thing of value or by and through a misrepresentation of facts to a board within the Department of Consumer Protection;
 (c) violating any applicable ordinance or resolution of any city or town regulating the work being done by a licensee or apprentice in accordance with Chapter 393 of the General Statutes;
 (d) violating any provision of Chapter 393 of the General Statutes or any regulations promulgated CT Page 4729 thereunder;
 (e) violating any provision of Chapter 541 of the General Statutes or any regulation or code promulgated thereunder;
(f) performing incompetent work;
(g) engaging in unethical conduct;
 (h) making false, misleading or deceptive representations regarding his work;
(i) performing-negligent work;
(j) conviction of a felony; or
(k) performing work beyond the scope of his license.
 Unless precluded by statute, actual knowledge, intent or willfulness, need not be shown to prove that a violation occurred. However, the Board must consider actual knowledge, intent and willfulness in determining the type of disciplinary action to take against a licensee." Regs. Conn. State Agencies § 20-332-18a.
A reading of the occupational licensing statutes and regulations amply demonstrates that Home Improvement Act's goal of protecting homeowners from substandard work, etc., is in some measure accomplished by the licensure requirements of the occupational licensing statutes. The legislature may well have created the exemption in C.G.S. § 20-428(4) based on these considerations.
Another way the Home Improvement Act attains its objectives is through The Home Improvement Guaranty Fund. C.G.S. § 20-432. It is funded by requiring salesmen and contractors issued certificates pursuant to the Home Improvement Act to pay a fee to The Home Improvement Guaranty Fund.
The plaintiff, not being a contractor licensed under Home Improvement Act, was not required to pay the fee to the Home Improvement Guaranty Fund. It hardly seems the legislature would have home improvement contractors pay this fee but exempt unlicensed contractors such as the plaintiff from this CT Page 4730 requirement.
Knowing the purposes and objectives of the Home Improvement Act, it is the court's view that any exemptions must be interpreted in harmony with its purposes and objectives and not in derogation of the Act. The court believes the exemption provided by C.G.S. § 20-428(4) must be interpreted strictly.
Only individuals can be licensed under Chapter 393. Persons, including a corporation, not licensed as plumbers may own and operate a plumbing business. C.G.S. § 20-337. But a unlicensed person or corporation owning a plumbing business is not a "person holding a current professional or occupational license issued pursuant to the General Statutes." Thus the plaintiff corporation, which does not "[hold] a current professional or occupational license issued pursuant to the General Statutes" is not exempted from The Home Improvement Act by C.G.S. § 20-428(4).
The court holds that a corporation engaged in plumbing work on a home improvement project is not exempt from the Home Improvement Act even if all the work is performed by individuals holding current Chapter 393 occupational licenses for plumbers. The court concludes that Avon Plumbing Heating Co., Inc. is not exempt from the Home Improvement Act in this case even if it were found that all the work was done by licensed plumbers.
the exemption relied upon by plaintiff, i.e. the exemption to "any person holding a current professional or occupational license issued pursuant to the General Statutes, provided such person engages only in that work for which he is licensed," does not help plaintiff.
It follows that the amendment requested would not benefit the plaintiff. Plaintiff's Request For Leave To File Amended Complaint, May 18, 1993, must be denied. [123]
Since the plaintiff cannot prevail without the amendment, see page 9 above, judgment must enter for the defendants.
The result required here is far from justice. Defendants have stated:
 "The defendants submit at the outset that this is a trivial collection case where the defendant has CT Page 4731 always been willing to pay what he understood to be a contract price of $5,000.00; and where the plaintiff has been adamant that it was entitled on a time and material basis to some $7,900, a total difference of less than $3,000." Defendants' Memorandum on Objections to Plaintiff's Request to Amend, June 14, 1993, p. 6.
In the same vein, defendants' counsel told the court that the "Defendants, frankly, don't give a hoot in Hades about the amount of the judgement [Sic]. They claim that they are entitled to a Defendants verdict." Transcript of Proceedings, May 24, 1993, p. 3.
Thus defendants have obtained a substantial windfall. Unfortunately that windfall may be far more than the $5000 they claim to be the contract price. The court, without any elaboration here of its reasons, tentatively had concluded that the plaintiff would have been entitled to the "fair and reasonable value of the Plaintiff's supplies, goods, services and labor" of $7,898.24 as found by the fact finder; the court would not have discounted that amount by 15%. Furthermore, the court believes the plaintiff would have been entitled to statutory interest from the Spring of 1990 to the date of judgment. Under this scenario, and provided the court's preliminary conclusions are correct, the defendants have had a windfall of well over $9,000.
Unfortunately, for plaintiff, this result is mandated by law. This case is similar to and controlled by Barrett Buildersv. Miller, 215 Conn. 308 (1990).
 "This case illuminates an additional problem that recovery in quasi contract in disregard of § 20-429
poses. It is evident that the objective of the Home Improvement Act is not only to protect homeowner from substandard work, but also to ensure that homeowners are able to make an informed choice on a decision that has potentially significant financial consequences. As one legislator commented, the statute seeks to promote `the right of the consumers to some understanding, some protection.' (Emphasis added 22 S. Proc., Pt. 17, 1979 Sess., p. 5797, remarks of Senator Audrey P. Beck. By requiring that home improvement contracts be reduced to a writing containing the entire agreement, § 20-429
CT Page 4732 serves to enlighten the homeowner as to the precise nature, scope and cost the proposed project, and thereby to caution again improvident use of family resources." [Footnote omitted] Barrett Builders v. Miller, 215 Conn. 308, 327 (1990).
A written contract as required by the Home Improvement Act probably would have prevented the dispute between these parties. The responsibility for, and the harsh consequences of the absence of, a written contract lies with the contractor, not the homeowner. The plaintiff here presumably did not know of the requirements of the Home Improvement Act. But that lack of knowledge does not excuse plaintiff from the consequences required by the Act. The Supreme Court has stated:
 "We recognize that our decision may lead to a harsh result where a contractor in good faith but in ignorance of the law performs valuable home improvements without complying with § 20-429. We are unpersuaded that this deficiency in the statute is within our power to remedy. Clearly, the legislature is entitled, in the first instance, to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer." [Footnote omitted] Barrett Builders v. Miller, 215 Conn. 308, 326 (1990).
The court has worked long — very long — and hard for a way to avoid the "harsh result where a contractor in good faith but in ignorance of the law performs valuable home improvements without complying with" the Home Improvement Act. But the law is otherwise; the court cannot avoid the "harsh result."
Judgment shall enter for the defendants.
Parker, J.